IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Case No. 12-cv-01419-CMA

YOOBANG KIM,

    Applicant,

v.

JAMES FALK, Warden of the Sterling Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) ("the Application"), filed *pro se* by Applicant Yoobang Kim. Respondents have filed an Answer to Application (Doc. # 18) ("the Answer"), and Mr. Kim has filed a Response to Answer to Application (Doc. # 21) ("the Traverse"). After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court concludes that the Application should be denied and the case dismissed with prejudice.

## I. BACKGROUND

Mr. Kim is a prisoner in the custody of the Colorado Department of Corrections. He is challenging the validity of his conviction in Arapahoe County District Court case number 02CR2132.

Mr. Kim elected to represent himself at trial and advisory counsel was appointed to assist him. The evidence presented to the jury revealed the following:

> In July 2002, defendant attacked his girlfriend (the victim) with a golf club and metal pipe after returning from drinks at a local bar. The victim's daughter woke up when she heard them arguing, attempted to call the police, and was struck by defendant. The victim's son then woke up, started screaming, and was likewise struck in the head by defendant. After the victim was beaten unconscious, defendant fled the apartment. The victim and her children were taken to the hospital, where the victim remained for two weeks due to severe head and facial injuries, including multiple fractures and the loss of an eye. When defendant was arrested the next day, he admitted striking the victim and her children and told police the victim's flirtatious behavior at the bar had enraged him.

*People v. Kim*, No. 04CA2508, slip op. at 1 (Colo. App. June 25, 2009) (unpublished) (Doc. # 1-1 at 23). The jury acquitted Mr. Kim of attempted first degree murder. He was convicted of first degree assault, second degree assault, child abuse resulting in serious bodily injury, and two crime of violence counts. He was sentenced to a total of seventy years in prison.

The Colorado Court of Appeals affirmed the judgment of conviction on direct appeal. *See id.* (Doc. # 1-1 at 22-43.) On March 15, 2010, the Colorado Supreme Court denied Mr. Kim's petition for writ of certiorari on direct appeal. (*See* Doc. # 12-6.) Mr. Kim also pursued postconviction relief in state court, but the state court post-conviction proceedings are not relevant to the Court's consideration of the merits of his claims in this action.

Mr. Kim asserts three claims for relief in the Application that relate to his right to counsel. He first claims he was denied substitute counsel in violation of his Sixth Amendment rights. He contends in claim two that he did not knowingly, voluntarily, and intelligently waive his right to counsel in violation of his Sixth and Fourteenth

2

Amendment rights. Mr. Kim finally claims he was denied due process when he was not allowed to revoke his waiver of counsel. The Colorado Court of Appeals described the factual background for these claims as follows:

> Initially, the public defender represented defendant, but later alternate defense counsel (ADC) represented him after the public defender withdrew due to a conflict not at issue here. In March 2004, defendant filed several pro se motions alleging ADC did not know the Korean language or customs; did not spend a reasonable amount of time on his case; was lazy; did not succeed in getting the district attorney to drop any of the charges and thus had not tried hard enough; recommended defendant consider the district attorney's plea bargain offer that would have resulted in forty-five years in prison; and voiced concerns regarding the likelihood of success at trial. Consequently, defendant requested removal of ADC and new representation.
>
> In April 2004, defendant reiterated his complaints at a hearing before the trial court denied his motion. The trial court stated it would not allow ADC to withdraw unless defendant planned to hire private counsel, which defendant could not afford to do. The trial court explained ADC was conflict-free and competent, and thus defendant could not receive substitute counsel at state expense. In explaining its ruling to defendant, the trial court stated it did not believe defendant's request for a new attorney was a request to represent himself but rather was a request only for another attorney more to defendant's liking. The trial court then explicitly asked defendant if he wanted to have any attorney during the trial, to which defendant replied, through his interpreter, that he was "going to represent himself."
>
> After defendant stated his desire to represent himself, the court (1) told him that he had a right to do so; (2) strongly cautioned him against the pitfalls and dangers of doing so; (3) noted that the Korean legal system and American legal system were different and that he would be expected to conduct himself in conformity with the rules of evidence, procedure, and jury selection, Colorado law, and the United States Constitution; (4) reiterated that ADC still represented him, that no sufficient reason for his withdrawal had been offered, and that he should talk over his decision to represent himself with ADC over the course of the next week; and (5) told him that the court was not permitted to assist him in his pro se defense, that the process was far from simple and the chance for mistakes was great, that he faced forty-eight years incarceration from one count alone and upwards of one hundred years if convicted on all counts, and that they would revisit the issue the following week.

3

> At the hearing a week later, which occurred less than three days before trial was scheduled to begin, defendant again stated that he wished to represent himself and that he remembered the advisement from the previous hearing. The prosecutor objected to defendant's request for self-representation, stating he believed defendant was merely "attempting to engineer a continuance by asking to represent himself on the eve of trial." The trial court then reconfirmed defendant wanted to allow ADC to withdraw as his attorney, and defendant unequivocally stated he did. The court asked if he would like advisory counsel, in which capacity the prosecutor suggested ADC could act, to which defendant replied, "I know it's very good for me to have advisory attorney with me but I hope I can get another attorney." The trial court then made findings regarding its advisement from the week before and continued trial until August 2004.
>
> In May 2004, when defendant was proceeding pro se, he again reiterated to the court ADC's shortcomings, nearly all of which regarded trial strategy, and asked the court what reasons would be sufficient to have ADC removed for cause in order for him to get new substitute counsel appointed. In August 2004, shortly before trial, defendant asked the court to negotiate a reasonable plea bargain between the district attorney and him, and he again reiterated ADC's deficiencies as he perceived them. He also requested another continuance, which the trial court denied along with defendant's request for representation, which, the court noted, presented no new evidence beyond what the court already had determined was insufficient to warrant appointing new counsel.

(Doc. # 1-1 at 24-27.)

## II. STANDARD OF REVIEW

The Court must construe the Application and the Traverse liberally because Mr. Kim is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Kim bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Kim seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Kim bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. MERITS OF APPLICANT'S CLAIMS

**A.   CLAIM ONE**

As set forth above, Mr. Kim first claims he was denied substitute counsel in violation of his Sixth Amendment rights. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963). With respect to the issue of substitute counsel, a criminal defendant has a constitutional right to representation by counsel that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

The Supreme Court has recognized at least the possibility of a conflict of interest between a criminal defendant and his or her attorney in various circumstances. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 164-65 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); *Wood v. Georgia*, 450 U.S. 261, 270-72 (1981) (suggesting strong

"possibility of a conflict of interest" when defendants were represented by a lawyer hired by their employer); *Cuyler*, 446 U.S. at 348 ("Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial.")  However, Mr. Kim fails to identify any clearly established Supreme Court law, and the Court is not aware of any, that provides an indigent criminal defendant with a constitutional right to substitute counsel in the absence of an actual conflict of interest.  In fact, the Supreme Court has made it clear that the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel."  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

Mr. Kim specifically contends in support of claim one that his Sixth Amendment right to counsel was violated when the trial court refused to appoint substitute counsel because counsel "was not acting appropriately or adequately in the plea bargaining process," counsel failed to seek a favorable plea bargain and threatened to inform the jury that Mr. Kim was guilty if he did not accept the prosecution's first offer, and counsel had only minimal communication with Mr. Kim that was hampered by counsel's lack of familiarity with Korean culture and custom.  (*See* Doc. # 1-1 at 6-7.)  Mr. Kim raised the same general concerns in state court on direct appeal:

> Here, defendant alleges that ADC's failures (1) to procure a favorable plea bargain; (2) to visit him in prison and spend a "reasonable amount of time on his case"; (3) to understand the Korean language and customs; and (4) to voice a positive outlook regarding success at trial demonstrated good cause to appoint substitute counsel.

(Doc. # 1-1 at 29-30.)  Although Mr. Kim's arguments in support of claim one in the Application and the Traverse include citations to, and discussions of, Supreme Court

cases involving the ineffective assistance of counsel during plea negotiations (*see* Docs. #1-1 at 4-11; #21 at 2), the Court notes that Mr. Kim's specific argument in claim one, and the only argument that was raised and exhausted in state court, is that his Sixth Amendment right to counsel was denied by the failure to appoint substitute counsel. The Court recognizes that resolution of claim one involves consideration of the relationship between Mr. Kim and his counsel during pretrial proceedings that included plea negotiations. However, Mr. Kim has not exhausted, and the Court does not read the Application as raising, a separate claim that Mr. Kim's Sixth Amendment right to the effective assistance of counsel was violated based on counsel's performance during plea negotiations.

With respect to Mr. Kim's Sixth Amendment claim premised on the denial of substitute counsel, the Colorado Court of Appeals concluded that Mr. Kim failed to demonstrate the existence of an actual conflict of interest and, thus, substitution of counsel was not warranted. The state court explained as follows:

> First, there is no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Consequently, defendant's perception that ADC failed to procure a favorable plea bargain does not rise to the level of good cause to appoint substitute counsel. The plea agreement ADC negotiated required forty-five years in prison, which was twenty-five years less than what defendant received by taking his case to trial and less than half the total amount of time he could have received if convicted on all charges. Defendant has not shown that another attorney could have negotiated either a better deal or one more acceptable to him.
>
> Second, failure to visit the defendant in jail does not amount to deficient performance by counsel, particularly where counsel meets with the defendant at the courthouse. *People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002). While a defendant always would prefer his attorney spend a significant amount of time devoted to his case, the law only requires that an attorney adequately prepare for trial and does not require

10

> that he or she spend a certain amount of time with the defendant. ADC met with defendant multiple times, both in court and at least three times in jail. Further, the trial court found ADC "made numerous appearances" on behalf of defendant in the court. Consequently, this also was not a sufficient reason to appoint substitute counsel.
>
> Third, we conclude ADC's lack of knowledge either about Korean customs or about the Korean language did not hinder his ability to represent defendant. Defendant at all times had a Korean translator available to him. Defendant has not shown that knowledge of Korean customs would have impacted potential defenses available to him.
>
> Fourth, disagreements about trial strategy do not amount to an actual, irreconcilable conflict meriting substitute counsel. *Hodges*, 134 P.3d at 425; *see also Garcia*, 64 P.3d at 863. Disagreements about trial strategy include differing opinions as to the strength of the defendant's case. *Hodges*, 134 P.3d at 425; *see also People v. Apodaca*, 998 P.2d 25, 28 (Colo. App. 1999) (counsel's personal disbelief of defendant's version of the facts not sufficient to establish conflict of interest and require trial court to appoint substitute counsel). Here, ADC expressed skepticism, not as to his ability to represent defendant, but as to defendant's likelihood of success at trial. It is counsel's responsibility to inform a defendant of all options, and the chances of success at trial affect those options. We conclude such a discussion is within counsel's scope of representation and does not amount to a sufficient reason to appoint substitute counsel based on a perceived conflict of interest.
>
> Accordingly, we conclude the trial court did not err in refusing to appoint substitute counsel.

(Doc. # 1-1 at 30-32.)

The determination by the Colorado Court of Appeals that Mr. Kim failed to demonstrate the existence of an actual conflict of interest with counsel is not based on an unreasonable determination of the facts in light of the evidence presented. In particular, the Court's review of the state court record confirms that no actual conflict of interest existed and that Mr. Kim merely disagreed with the manner in which appointed counsel was handling his case.

11

Because there was no actual conflict of interest between Mr. Kim and alternate defense counsel, the determination by the Colorado Court of Appeals that Mr. Kim's Sixth Amendment rights were not violated also is not contrary to or an unreasonable application of clearly established Supreme Court law.  *See Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) ("Plumlee has cited no Supreme Court case – and we are not aware of any – that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust.").  As noted above, the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel."  *Morris*, 461 U.S. at 14.

For these reasons, the Court finds that Mr. Kim is not entitled to relief with respect to claim one.

**B.    CLAIM TWO**

Mr. Kim contends in claim two that his Sixth and Fourteenth Amendment rights were violated because he did not knowingly, voluntarily, and intelligently waive his right to counsel.  Clearly established federal law recognizes that a defendant in a criminal proceeding has a constitutional right to waive his right to counsel and represent himself.  *Faretta v. California*, 422 U.S. 806 (1975).  In order to be effective, a waiver of counsel must be knowing, voluntary, and intelligent.  *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  Whether a waiver is knowing, voluntary, and intelligent "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted).  In the context of a criminal proceeding that

12

goes to trial, warnings regarding the pitfalls of proceeding without counsel must be rigorously conveyed. *See Patterson v. Illinois*, 487 U.S. 285, 299 (1988).

The issue of whether a waiver of the right to counsel is knowing, voluntary, and intelligent is a mixed question of law and fact. *See Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991). Mr. Kim bears the burden of proving that he did not competently and intelligently waive his right to the assistance of counsel. *See Tovar*, 541 U.S. at 92.

Mr. Kim contends that his waiver of counsel was not valid because the only practical alternative was representation by an attorney with whom he had a conflict. Essentially, Mr. Kim contends that his waiver was not valid because substitute counsel should have been appointed as he contends in claim one:

> It was a "Hobson's Choice": either way Mr. Kim was losing an important right. Mr. Ahmann, Mr. Kim's appointed attorney, had threatened to tell the jury Mr. Kim was guilty in opening statements if he refused to plead guilty. The Supreme Court has held that defense counsel may not use these types of tactics in order to coerce a defendant during the plea process. *Brookhart v. Janis*, 384 U.S. 1, 7 (1966). Counsel was not communicating with Mr. Kim, as any normal attorney would do, but was instead using threats. If the plea agreement of 45 years which was first offered was good, counsel had a duty to consult Mr. Kim about it. Yet the State courts did not find these facts relevant or persuasive.

(Doc. # 1-1 at 15.) Mr. Kim also contends that the trial court failed to provide an adequate advisement regarding the waiver of counsel because it was split between two hearings held one week apart and the trial court failed to conduct a comprehensive inquiry to determine whether the waiver was valid.

On direct appeal, the Colorado Court of Appeals concluded that Mr. Kim voluntarily waived his right to counsel because, when asked explicitly if he wanted to

represent himself following the denial of his requests for appointment of substitute counsel, Mr. Kim told the trial court that he did wish to represent himself. (*See* Doc. # 1-1 at 36-37.) The Colorado Court of Appeals also determined that the waiver was knowing and intelligent for the following reasons:

> Considering all the circumstances here, particularly defendant's repeated requests to represent himself, lack of sufficient reason to dismiss ADC for cause, and the trial court's repeated warnings against proceeding pro se, we conclude the trial court correctly determined defendant knowingly and intelligently waived his right to counsel.
>
> When the inquiry was put directly to him, defendant left no doubt he wanted ADC to be removed from his case and he wanted to represent himself. The trial court determined ADC was competent and there were no sufficient reasons to replace him with substitute counsel. The trial court plainly explained to defendant that he could proceed with ADC or, if he chose to have ADC removed, he could represent himself. *See People v. Mossmann*, 17 P.3d 165 (Colo. App. 2000).
>
> When the trial court suggested ADC could act as advisory counsel to defendant, the following colloquy took place:
>
>> [Trial Court]: Recognizing those limitations on the participation of that advisory attorney, do you wish to have an advisory attorney in this case?
>>
>> [Defendant] (through interpreter): I know it's very good for me to have advisory attorney with me but I hope can get another attorney.
>>
>> [Trial Court]: So if I understand, [defendant], you do not want to have [ADC] as your advisory attorney?
>>
>> [Defendant] (through interpreter): Yes, that's true, Your Honor.
>>
>> [Trial Court]: But you would prefer to have an advisory attorney.
>>
>> [Defendant]: Yes.
>
> There is some dispute whether during this discussion defendant simply did not want ADC as his advisory counsel and preferred another attorney act in this capacity or whether, as he now contends, he simply was again requesting an attorney other than ADC to represent him at trial.

> Based on the context of the statement, we conclude defendant was requesting ADC not be his advisory counsel. Defendant clearly stated he did not want ADC as his advisory counsel, and the entire thrust of this colloquy was advisory counsel, not counsel at a future trial. Further, defendant had several times previously stated, explicitly, that he wanted to go represent himself at trial. Even if he was requesting another attorney besides ADC to represent him at trial, the trial court already had determined there was no sufficient reason to remove ADC, had explained its reasoning to defendant, and had given him the option of either going to trial with ADC or proceeding pro se. Nevertheless, defendant still rejected ADC. Thus, the only way he could have had a new attorney at trial was if he hired his own private counsel, which the trial court had also told him explicitly.
>
> Although the trial court's advisement could have been more comprehensive, we nonetheless conclude it substantially complied with the required *Arguello* factors. The trial court warned defendant repeatedly of the dangers of self-representation; warned him he would have to understand and apply the relevant rules of evidence, procedure, and substantive law; advised him that he had a right to represent himself; warned him that the court could not assist him; and warned him that the punishment he faced was severe. Nonetheless, defendant explicitly stated he would rather represent himself than proceed with ADC, who had represented him for nearly two years in all pretrial matters. The trial court also knew that defendant was enrolled in a Ph.D. program, that his English was not strong but that a translator would be provided, that his request to represent himself occurred mere days before trial initially was scheduled to begin, and that trial would be continued for four months to give defendant time to prepare.
>
> The trial court took the necessary precautions to provide defendant with sufficient warning as to the dangers and disadvantages of self-representation. The court explained to defendant the severity of the charges against him, that he would be expected to know all the applicable rules of procedure, and that it could not assist him in putting on his defense. It then gave him a week to think it over and talk it over with ADC. Nevertheless, defendant at two separate hearings repeatedly stated his desire to represent himself. Having found no sufficient reason to remove ADC and appoint new substitute counsel, the trial court was justified in having defendant choose between representing himself or proceeding with ADC. Having rejected ADC, defendant cannot later demand new counsel based on the same reasons the trial court previously determined to be insufficient to establish an irreconcilable conflict with ADC.

(Doc. # 1-1 at 38-42.)

15

Mr. Kim fails to present any clear and convincing evidence sufficient to overcome the presumption of correctness that attaches to the state court's factual findings regarding the trial court's advisement and Mr. Kim's waiver of his right to counsel. *See* 28 U.S.C. § 2254(e)(1). Furthermore, in light of the Court's review of the state court record, the Court concludes that the state court's decision rejecting Mr. Kim's invalid waiver claim is not based on an unreasonable determination of the facts in light of the evidence presented. The Colorado Court of Appeals also applied the correct legal standards established by the Supreme Court and considered the particular facts and circumstances applicable to Mr. Kim, including his background, English-language skills, and repeated requests to represent himself. *See Tovar*, 541 U.S. at 88; *Edwards*, 451 U.S. at 482.

Next, the Colorado Court of Appeals reached a decision that is not unreasonable. To the extent Mr. Kim contends the waiver was invalid because substitute counsel should have been appointed, the Court disagrees for the reasons discussed above in the context of claim one. To the extent Mr. Kim contends the advisement was not comprehensive, the state court's contrary conclusion is not unreasonable. In particular, Mr. Kim does not dispute the factual determination, which is supported by the state court record, that the trial court

> warned [him] repeatedly of the dangers of self-representation; warned him he would have to understand and apply the relevant rules of evidence, procedure, and substantive law; advised him that he had a right to represent himself; warned him that the court could not assist him; and warned him that the punishment he faced was severe.

(Doc. # 1-1 at 40.) Finally, Mr. Kim's contention that the trial court proceedings concerning the advisement and waiver should not have been split between two hearings

one week apart does not demonstrate the waiver was invalid. It is not unreasonable to conclude that allowing Mr. Kim an additional week to consider whether he truly wished to waive his right to counsel actually supports the conclusion that his waiver was knowing and intelligent.

Therefore, the Court finds that Mr. Kim also is not entitled to relief with respect to claim two.

**C.     CLAIM THREE**

Mr. Kim contends in claim three that he was denied due process when he was not allowed to revoke his waiver of counsel. Mr. Kim specifically argues as follows in support of this claim:

> As trial approached it became abundantly clear to all concerned that Mr. Kim's unfamiliarity with the language and his incarceration would result in him being unable to put up a competent defense. It also became clear that Mr. Kim really never desired to represent himself – he only tried to obtain substitute counsel. Advisory counsel had been appointed to the case, but counsel informed the court that he had been unable to help Mr. Kim due to the language barrier.
>
> Further, though previous counsel (Mr. Ahmann) told the trial court he would forward the discovery to Mr. Kim, it wasn't until just a few months before trial that Mr. Kim recieved [sic] it from counsel. This delay was never explained, but it certainly prejudiced Mr. Kim who had to laboriously sift through and translate the papers which were all in English.
>
> Under the unique circumstances of the case, Mr. Kim should have been permitted to revoke his waiver of counsel.

(Doc. # 1-1 at 21.)

The Colorado Court of Appeals rejected Mr. Kim's claim that counsel should have been reappointed for the following reasons:

> Finally, defendant suggests that because he clearly requested representation as trial approached, he effectively revoked his waiver of counsel and consequently the trial court was required to supply him with an attorney. We reject this argument. One who elects to act as his or her own attorney must accept the burdens and hazards that accompany that decision. *People v. Price*, 903 P.2d 1190, 1192 (Colo. App. 1995). Unlike in other jurisdictions, there is no statute or rule in Colorado that allows criminal defendants a right to revoke a valid waiver of counsel. *Id.*; *cf. State v. Rickman*, 715 P.2d 752, 755 (Ariz. 1986) (allowing a defendant to withdraw his waiver of counsel at any time). Consequently, a trial court is not required to grant a defendant's request to withdraw a valid waiver of his right to counsel, although it may exercise its discretion in evaluating the circumstances surrounding the request. *Price*, 903 P.2d at 1192.

(Doc. # 1-1 at 42.)

Respondents argue that Mr. Kim is not entitled to relief with respect to claim three because he fails to identify any clearly established federal law concerning revocation of a waiver of the right to counsel. The Court agrees. *See John-Charles v. California*, 646 F.3d 1243, 1249 (9th Cir. 2011) (finding no clearly established federal law for purposes of claim that defendant is constitutionally entitled to reappointment of counsel after valid waiver of counsel). Because "[t]he absence of clearly established federal law is dispositive under § 2254(d)(1)," *see House*, 527 F.3d at 1016, the Court finds Mr. Kim is not entitled to relief with respect to claim three.

In addition, the Court finds that Mr. Kim is not entitled to relief with respect to claim three even if the Court considers the claim in the context of the general principles set forth in *Gideon* and *Faretta*. As noted above, although an indigent inmate has a Sixth Amendment right to have counsel appointed for him at state expense, *Gideon*, 372 U.S. at 339-45, a defendant in a criminal proceeding also has a constitutional right to waive his right to counsel and to represent himself, *see Faretta*, 422 U.S. at 807. As a result, "[o]nce a defendant has exercised the Sixth Amendment right to proceed

pro se, the defendant necessarily forgoes the reciprocal Sixth Amendment right to counsel at all critical stages of the criminal process." *John-Charles*, 646 F.3d at 1248 (internal quotation marks omitted).  In considering whether Mr. Kim may be entitled to relief pursuant to § 2254(d)(1) under the general principles set forth in *Gideon* and *Faretta*, the Court emphasizes that, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 131 S. Ct. at 786.

The Court is not persuaded that Mr. Kim is entitled to relief under the general principles of *Gideon* and *Faretta* with respect to his claim that he was denied due process when he was not allowed to revoke his waiver of counsel.  In short, the state court's conclusion "that there is no absolute right to reinstatement of counsel after a *Faretta* waiver is within 'the range of reasonable applications' of *Gideon* and *Faretta*." *John-Charles*, 646 F.3d at 1249 (quoting *Harrington*, 131 S. Ct. at 788); *see also United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir. 1993) ("Once a defendant exercises his constitutional right to defend himself and proceed *pro se*, he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel."); *Robinson v. Ignacio*, 360 F.3d 1044, 1056 (9th Cir. 2004) ("the Supreme Court has made it clear that once a defendant has made such a waiver, he must bear the consequences without complaint though he conducted his own defense to his own detriment").  Therefore, the Court finds that Mr. Kim also is not entitled to relief with respect to claim three.

20

## IV. **CONCLUSION**

In summary, the Court finds that Mr. Kim is not entitled to relief in this action. Accordingly,

IT IS ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) is DENIED and this case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED:  June __11__, 2013

BY THE COURT:

_Christine M Arguello_
_____
CHRISTINE M. ARGUELLO
United States District Judge